[Civ. No. 18423. Third Dist. Nov. 28, 1979.]

THE PEOPLE, Petitioner, v.
THE SUPERIOR COURT OF GLENN COUNTY, Respondent;
LAWRENCE W. SANDERS et al., Real Parties in Interest.

COUNSEL

George Deukmejian, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, James T. McNally and Diana B. Constantino, Deputy Attorneys General, for Petitioner.

No appearance for Respondent.

Quin Denvir, State Public Defender, under appointment by the Court of Appeal, Ezra Hendon, Chief Assistant State Public Defender, and Stephen Berlin, Deputy State Public Defender, for Real Parties in Interest.

## OPINION

**PARAS, J.**—The People petition for a writ of prohibition or mandate to set aside an order issued by the trial court after real parties in interest successfully moved to suppress evidence obtained during a warrantless search of an automobile. We will issue the writ.

The evidence in question consists of a .44 magnum pistol and a sawed-off shotgun found in a Pinto automobile driven by defendant Michael Setzer. Defendant Lawrence Sanders and a third person were front seat passengers. A police officer, Reggie Boelman, followed and stopped the car after employees of a restaurant in Willows had reported that a pistol had been left in a booth around 10 p.m.; when police arrived at the restaurant bystanders indicated that Sanders, who was walking at that moment toward the parked Pinto, had just returned and retrieved the gun. After the stop, Sanders and Setzer exited the Pinto to talk to the officer and Sanders told him the gun was in the glove compartment. The third passenger, a woman, who was seated on the transmission hump between the two front bucket seats, opened the glove compartment located directly in front of Sanders' position in the vehicle. Boelman then removed from it a .357 magnum pistol, which he took back to his patrol car for a radio check.

Daniel Buxton was one of three Willows police officers summoned to back up Boelman. He was standing next to the open car door on the passenger side when, with the aid of a flashlight, he observed five or six loose cartridges on the floor forward of the front seat. Buxton did not then know the caliber of the pistol taken from the glove compartment, but the cartridges were later determined to be of the same caliber. Bending down into the vehicle to pick up the loose cartridges, Buxton observed a box of cartridges of the same caliber protruding from under

the passenger front seat. He picked up the box and began to search for more concealed weapons.[1]

Three or four inches back under the passenger seat, Buxton found a .44 caliber pistol. He gave it to another officer to take to the patrol car, and asked the passenger to exit. Buxton then searched the rest of the vehicle's passenger compartment. He found a loaded .20 gauge sawed-off shotgun on the rear seat, covered by the folded-over back cushion.

During Buxton's search, Setzer was standing at the left rear of the car, less than three feet from the closed hatchback door and five to six feet from the rear seat. Sanders was three or four feet away from the side of the car, an equal distance to the rear of the passenger side door, and five feet from the front seat. There was a police officer with each of the men, both of whom were polite and friendly. After the search, Sanders told police that all the guns were his; both he and Setzer were arrested and charged with one count of possession of the sawed-off shotgun (Pen. Code, § 12020, subd. (a)), three counts of carrying unlicensed concealable firearms in a vehicle (Pen. Code, § 12025, subd. (a)), and one count of carrying a loaded firearm in a public street (Pen. Code, § 12031, subd. (a)). The car was not impounded and the other passenger was not detained.

The trial court granted the motion of Sanders and Setzer[2] to suppress the .44 pistol and the shotgun. It found the People had not shown proper justification for the warrantless search as incident to an arrest, pursuant to the dictates of *People* v. *Superior Court (Kiefer)* (1970) 3 Cal.3d 807 [91 Cal.Rptr. 729, 478 P.2d 449, 45 A.L.R.3d 559] and *Chimel* v. *California* (1969) 395 U.S. 752 [23 L.Ed.2d 685, 89 S.Ct. 2034]. The court also found the scope of the search was not reasonable because Buxton was not looking for further evidence of the crime for which defendants could have been arrested at that point (possession of a concealed .357 magnum pistol) but was conducting an exploratory search for other concealed weapons. Since Buxton had no reasonable

---

[1]At one point in his testimony, Buxton indicated he saw a .44 magnum pistol under the front seat when he bent to retrieve the cartridges and the box. Since both the trial court's memorandum of decision and the People's fact recitation use the term "search" in connection with the finding of the .44 pistol, we conclude that the issue of plain view discovery was resolved adversely to the People and is not now challenged. We proceed accordingly.

[2]Although the record copy of the suppression motion shows only defendant Sanders' name, Setzer appeared and argued at the hearing and the trial court treated the motion as joint. We do likewise.

grounds to believe the defendants might attempt an escape or assault on the officers and showed no concern with the presence of the other passenger until he found the second pistol, the court concluded he was in the right place for a weapons search but for the wrong reason, and that the evidence must be suppressed.

As a preliminary matter, we note that defendants' demurrer to the writ petition must fail; we find no defects in the form of the petition or in the record lodged for our consideration. (See Code Civ. Proc., §§ 446, 1109.)

■ The People first argue that Buxton's search for weapons was not exploratory because he had probable cause to believe the car contained "articles the possession of which is itself unlawful. . . ." (See *People* v. *Superior Court (Kiefer), supra,* 3 Cal.3d at p. 812.) We agree.

■ As a reviewing court, our responsibility is to measure the facts as found by the trier against the constitutional standard of reasonableness. (*People* v. *Brisendine* (1975) 13 Cal.3d 528, 536 [119 Cal.Rptr. 315, 531 P.2d 1099].) ■ When an automobile is legally stopped on a public highway, as it was here, the validity of the search turns on the question of "'the reasonable cause the seizing officer has for belief that the contents of the automobile offend against the law.'" (*Chambers* v. *Maroney* (1970) 399 U.S. 42, 49 [26 L.Ed.2d 419, 427, 90 S.Ct. 1975], quoting *Carroll* v. *United States* (1925) 267 U.S. 132, 158-159 [69 L.Ed. 543, 554, 45 S.Ct. 280, 39 A.L.R. 790].)

■ The issue here is whether the legal discovery at night of one concealed weapon and a quantity of matching cartridges in an automobile carrying three persons furnishes the requisite probable cause to justify a warrantless search of the remaining parts of the vehicle's passenger compartment. The applicable test for probable cause is whether the facts and circumstances known to the searching officer were sufficient to warrant the belief of a reasonably cautious person that more weapons were being transported in the vehicle. (See *People* v. *Superior Court (Kiefer), supra,* 3 Cal.3d at pp. 815-816.) That test is met here. Where one of a trio of persons is in possession of a weapon in a vehicle, ordinary caution would lead to the strong suspicion that other weapons are present. This is even more apparent where a box of ammunition is also found, with some of its rounds loose on the floor. As the court noted in a different context in *People* v. *DeLong* (1970) 11 Cal.App.3d

786, 792 [90 Cal.Rptr. 193], the nature of weapons is such that one does not measure probabilities by the standards that apply to other objects. Further, observation of contraband or suspicious objects from a lawful vantage point is one of the most reliable of the circumstances that may furnish probable cause to justify searching the passenger compartment of an automobile. (*People* v. *Superior Court (Kiefer), supra,* 3 Cal.3d at p. 817; see also *Wimberly* v. *Superior Court* (1976) 16 Cal.3d 557, 562-556 [128 Cal.Rptr. 641, 547 P.2d 417] and *People* v. *McNeal* (1979) 90 Cal.App.3d 830, 841, fn. 3. [153 Cal.Rptr. 706].)

Although the theory justifying an automobile search based on probable cause is different from that which justifies a search incident to an arrest (*Chimel* v. *California, supra,* 395 U.S. 752 and *People* v. *Green* (1971) 15 Cal.App.3d 766, 772 [93 Cal.Rptr. 433].), there is no suggestion in search arrest cases that the police are obliged to refrain from further search after having found a single weapon. Buxton testified, and the court found, that the purpose of the search was to uncover additional concealed weapons. The reasonableness of a suspicion of the presence of such weapons after finding the first one was not disputed in *People* v. *Jochen* (1975) 46 Cal.App.3d 243, 247 [119 Cal.Rptr. 914], and was upheld in *People* v. *McNeal, supra.* The search did not exceed a reasonable scope by forcible entry into a locked area, as in *People* v. *Koehn* (1972) 25 Cal.App.3d 799 [102 Cal.Rptr. 102]. We conclude the search was reasonable.

The People's writ petition is granted. Let a writ of mandate issue directing the superior court to set aside its order granting real parties in interest's motion to suppress the subject evidence, and to deny said motion.

Puglia, P. J., and Blease, J., concurred.

The petition of real parties in interest for a hearing by the Supreme Court was denied January 24, 1980.