[No. A107699. First Dist., Div. Two. Oct. 12, 2005.]

THE PEOPLE, Plaintiff and Appellant, v.
VORRIS ERIC HUNTER, Defendant and Respondent.

**COUNSEL**

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Gerald A. Engler, Assistant Attorney General, Eric D. Share and Amy Haddix, Deputy Attorneys General, for Plaintiff and Appellant.

Vorris Eric Hunter, in pro. per., for Defendant and Respondent.

## OPINION

**RUVOLO, J.**—A felony complaint charged defendant Vorris Eric Hunter with cocaine base and marijuana possession for sale (Health & Saf. Code, §§ 11351.5 & 11359), gun possession by a felon (Pen. Code, § 12021, subd. (a)(1)) and special allegations. He moved at the preliminary hearing to suppress evidence (*id.*, § 1538.5), and the magistrate granted his motion on grounds that a car stop that yielded probable cause to seize drugs from the passenger area was deficient under *Wimberly v. Superior Court* (1976) 16 Cal.3d 557 [128 Cal.Rptr. 641, 547 P.2d 417] (*Wimberly*) to support a trunk search that led to further seizures. The People sustained a dismissal, lacking evidence to proceed, and now appeal from a denial of their motion to reinstate the complaint (Pen. Code, § 871.5). The appeal lies (*id.*, § 1238, subd. (a)(9); *People v. Toney* (2004) 32 Cal.4th 228, 231 [8 Cal.Rptr.3d 577, 82 P.3d 778]; *People v. Williams* (2005) 35 Cal.4th 817, 823–824 [28 Cal.Rptr.3d 29, 110 P.3d 1239]), and we agree with the People that suppression was unsound in light of post-*Wimberly* law.

### BACKGROUND

**Preliminary hearing evidence.** Testimony was from Terry Poyser, Steven Kent, Jr. and James O'Connell, crime-suppression-unit officers for the Vallejo Police Department who helped in a July 9, 2003, traffic stop, search and arrest of defendant. Poyser and Kent were patrolling at 5:15 p.m. when they saw a late '60's Ford Mustang and pulled it over for its "very loud" muffler (Veh. Code, § 27150). Defendant, the driver, stopped normally. He had two male passengers. One in the backseat looked back at the officers several times as the car stopped and moved around inside, which Poyser deemed suspicious. The officers asked all for identification (ID) and saw that none wore a seatbelt (see *id.*, § 27315, subds. (d)–(e), (h)). O'Connell, a supervisor, arrived within two minutes to assist and found his officers talking to the detainees, who were still in the Mustang.[1]

Defendant produced a California driver's license, later verified as valid, and said the car was his. The rear passenger had no ID but said he was on CYA (California Youth Authority) parole. Poyser knew the front passenger as "a street drug dealer" they'd had numerous contacts with for "drug-dealing type" incidents and complaints. For officer safety while ID's were verified, all three were ordered out of the two-door car, the front two first. As the backseat

---

[1] Poyser and O'Connell each related over 10 years' police officer experience and specific experience with "street-level" narcotics as members of the crime suppression unit. There was no dispute about their ability to identify the substances they found as drugs, and Kent, a 16-year veteran, was stipulated to be an expert in sales of cocaine base and marijuana.

rider got out, O'Connell saw on the seat, from outside on the sidewalk, a knotted clear plastic (but not Ziploc) sandwich bag containing a green residue that his training and experience told him—from the particles, packaging and knotting—was marijuana. He went in and took the bag. While inside, he noticed a plastic bag ("coin"-type bag) of marijuana in an open dashboard ashtray. He seized that bag, too, and knew it contained a usable amount (.42 grams).[2] When defendant said the ashtray bag was his, Poyser began to write up a citation for driving with less than one ounce of marijuana in the car, a misdemeanor (Veh. Code, § 23222, subd. (b)). Right after the first bag had been found, the officers got radio verification that the backseat passenger was indeed on CYA parole.

Upon finding the second bag and defendant's apparent violation of Vehicle Code section 23222, the officers decided to search the rest of the car for more marijuana and try to confirm the car's ownership. Common packaging for marijuana is to knot bags, or use zip-top bags, to seal in the drug. Finding no more drugs in the interior, the officers turned to the trunk and asked defendant for the key. He told them he did not have one (despite claiming ownership), but in fact one of the keys hanging from the ignition was the trunk key. O'Connell opened the trunk.

Inside he and Poyser found a blue backpack containing, among other things, 14 more bags of marijuana, a loaded nine-millimeter semi-automatic handgun with two more loaded magazines for the weapon, a stun gun, and a "black head cover" and white hockey mask. The marijuana weighed an estimated 16.42 grams in all and was packaged in four sandwich bags and 10 "individual small bags" bearing "the same logo" as the one found in the ashtray. Empty plastic bags were also found.

After those discoveries, defendant was arrested for possessing the weapon and possessing marijuana for sale, and this led to further discoveries at the station, where he was searched. A front pants pocket held $195 cash in $20's and smaller denominations. A rear pocket held two inch-plus square zip-top bags, also with the same logo as the ashtray bag, and "stuck in his buttocks" was a plastic bag holding nine rocks of cocaine totaling 2.03 grams, each rock "wrapped in plastic, tied at one end." In the expert opinion of Kent, the full circumstances, including the items from the trunk and postarrest search, showed the marijuana and cocaine to be possessed for sale. Possession of the amount in the ashtray "alone," he hedged, "[m]ost likely could be" indicative of personal use.

---

[2] Poyser testified that the *first* bag might *not* have held a usable amount.

**Motion to suppress.** Defendant's motion to suppress challenged the search of the trunk as nonconsensual, not incident to arrest or inventory search and, crucially to the issues before us, lacking probable cause under the state high court's 1976 decision in *Wimberly*. The People argued that, with the suppression remedy limited in California since the 1982 voter-enacted Truth-in-Evidence provision of Proposition 8 (Cal. Const., art. 1, § 28, subd. (d)) and with the federal high court having clarified that year in *United States v. Ross* (1982) 456 U.S. 798, 825 [72 L.Ed.2d 572, 102 S.Ct. 2157] (*Ross*) that probable cause to search an automobile extends to every part of the vehicle and its contents that might conceal the object of the search, *Wimberly* no longer controlled for suppression. The People also cited *People v. Dey* (2000) 84 Cal.App.4th 1318 [101 Cal.Rptr.2d 581] (*Dey*), which so held and, confronted with a car stop that revealed a marijuana bud in the passenger area, upheld a trunk search and declined to follow that aspect of *Wimberly*. These same points were reiterated at oral argument.

The magistrate's remarks reveal his findings and reasons for granting suppression. Rejecting a defense argument of unduly prolonged detention, he found that O'Connell arrived "very shortly" after the stop, "was in a lawful location on the sidewalk" when he spied the bag on the seat and "reasonably believed"—"because that's what it looks like to me"—it contained marijuana. Then, while lawfully seizing that bag, the officer saw the ashtray marijuana "classically packaged up" and properly seized it.

What troubled the magistrate was the trunk search. Acknowledging that marijuana had been found in "two separate locations" in the passenger area, that one passenger was "on CYA parole" and that another was "a dope dealer known to the police," the judge was nevertheless bothered that an informant in *Ross* had specifically reported that drugs were to be found in a trunk (*Ross, supra,* 456 U.S. at p. 800) and that a defense-cited case here, *New York v. Belton* (1981) 453 U.S. 454, 460–461, footnote 4 [69 L.Ed.2d 768, 101 S.Ct. 2860] (*Belton*), had said that its holding on a search incident to arrest did not extend to a car's trunk. While the People's opposition papers and remarks urged that the key issue was not search incident to arrest, but probable cause to search the vehicle for marijuana, the magistrate called *Belton* "still good law," said "I certainly don't understand the holding in *D[e]y*," and found a lack of probable cause to support searching the trunk. He stated: "I'm not going to follow *D[e]y* just willy-nilly, that any presence of marijuana in the passenger compartment of a vehicle supports a trunk search. And I don't think a reasonable magistrate would issue a search warrant for that trunk. So I'm going to grant the suppression motion."

**Motion to reinstate.** The People's motion to reinstate (coincidentally coming before the same judge) and opposition repeated the same arguments. The court denied it, again giving no precedential value to *Dey* and this time saying without elaboration that the motion failed to show error or misapplication of the law.[3]

## DISCUSSION

The People's appellate challenge is to the finding of no probable cause to search the trunk, and their arguments are, once again, those that they raised below. They fault particularly the court's reliance on *Wimberly* and do not seem to dispute the magistrate's implicit ruling that a trunk search was not justified as part of a search incident to arrest.[4]

■ "In determining whether to compel reinstatement of a complaint dismissed after the granting of a defendant's suppression motion by the magistrate at a preliminary hearing, the superior court reviews the legal soundness of the magistrate's ruling on the suppression motion" but does not relitigate the motion itself. (*People v. Toney, supra*, 32 Cal.4th at p. 233.) The same judge wore two hats in this case, first as magistrate on the suppression motion, and then as reviewing judge on the reinstatement motion. His role on the latter motion thus mirrored ours on appeal: "We defer to the [magistrate's] factual findings, express or implied, where supported by substantial evidence. In determining whether, on the facts so found, the search or seizure was reasonable under the Fourth Amendment, we exercise our independent judgment. [Citations.]" (*People v. Glaser* (1995) 11 Cal.4th 354, 362 [45 Cal.Rptr.2d 425, 902 P.2d 729].) "To decide whether relevant evidence obtained by assertedly unlawful means must be excluded in a trial for crimes

---

[3] The court did say as to its earlier ruling: "The D.A. was unable to proceed, and I dismissed the case. But I should not have suppressed all the evidence, because what my ruling was or should have been, and I don't think I made it clear, is that . . . one of the officers was in a place where he had a lawful right to be, and in plain view observed a small amount of marijuana that was in the ashtray. And I'm not suppressing that. [¶] I'm suppressing everything that was found in the trunk, which was a substantial amount of contraband and so forth. And I'm also suppressing the items located during a search of the defendant at the police department after his arrest. So I just want to clarify that." Our reversal of the reinstatement denial on other grounds leaves no need to consider the effect of the purported narrowing of the ruling.

[4] They cited cases below holding that possessing less than an ounce of marijuana, while exempt from arrest or booking where one furnishes satisfactory identity and promises to appear, nevertheless may support a search for further contraband (*People v. Coleman* (1991) 229 Cal.App.3d 321, 325–328 [280 Cal.Rptr. 54]; *People v. Brocks* (1981) 124 Cal.App.3d 959, 964–965 [177 Cal.Rptr. 730]). The problem, we infer from the ruling, is that the magistrate concluded that the trunk was not within defendant's immediate surrounding area, a spatial limitation governing searches incident to arrest (*Belton, supra*, 453 U.S. at p. 457). Officer Kent had testified that he saw no ready means of access to the trunk from the front area.

allegedly committed after June 8, 1982, we look exclusively to whether its suppression is required by the United States Constitution." (*Id.* at p. 363; see Cal. Const., art. I, § 28, subd. (d).)

While this review standard would generally require us to resolve factual disputes *against* the People and thus in support of finding no probable cause to search the trunk, it appears from the magistrate's remarks that he accepted as *true* all pertinent testimony of the officers' probable cause. He accepted that they validly seized two bags of marijuana, and he accepted their expertise in the drug's usual street packaging, calling the ashtray drug "classically packaged up" and O'Connell "a reasonable police officer with a great deal of experience" who "reasonably believed" he saw marijuana residue in the backseat bag. The magistrate also found that the officers, having found "two separate locations" of marijuana in the passenger area, knew that the youth seated near the first bag in the backseat was "on CYA parole" and that the front passenger was "a dope dealer known to the police." It was undisputed that defendant told the officers, before they searched the trunk, that the ashtray bag was his and then lied, saying he did not have a key. What we face, then, is the application of found-true or undisputed facts to the legal test of probable cause, which is a matter for our independent judgment. (*People v. Glaser, supra,* 11 Cal.4th at p. 362; *Ornelas v. United States* (1996) 517 U.S. 690, 699 [134 L.Ed.2d 911, 116 S.Ct. 1657].)

█ Probable cause to search is "a fair probability that contraband or evidence of a crime will be found in a particular place" (*Illinois v. Gates* (1983) 462 U.S. 213, 238 [76 L.Ed.2d 527, 103 S.Ct. 2317]) and, while by nature a fluid concept incapable of " 'finely-tuned standards,' " is said to exist "where the known facts and circumstances are sufficient to warrant a man of reasonable prudence in the belief that contraband or evidence of a crime will be found" (*Ornelas v. United States, supra,* 517 U.S. at p. 696). It must be viewed through the lens of an officer's experience and expertise (*id.* at p. 699), as the magistrate apparently did here. So why did the magistrate find no probable cause to search the trunk of a car that had been found to contain two packages of marijuana, a drug dealer and a CYA parolee?

The evident problem was *Wimberly,* where officers had stopped a speeding and weaving car and, while the petitioner driver and passenger retrieved registration papers, saw a smoking pipe on the floor near the passenger's feet and a dozen dark seeds thought to be burnt marijuana. One officer got the pipe from the passenger and noticed burnt residue, with seeds and stems and, after the occupants were out of the car, noticed a faint odor of burnt marijuana inside as he searched a jacket on the floor and found in a pocket a plastic bag containing a "small quantity" of the drug. (*Wimberly, supra,* 16 Cal.3d at pp. 561–562.) The Supreme Court found the search valid to that

point (*id.* at pp. 562–566) but invalid insofar as the officers went on to open the trunk and find several pounds of marijuana in a suitcase (*id.* at pp. 566–572). Citing a "greater expectation of privacy" in concealed areas of a car (*id.* at p. 567) and rejecting an argument that the *Carroll* doctrine for probable-cause searches of cars (*Carroll v. United States* (1925) 267 U.S. 132 [69 L.Ed. 543, 45 S.Ct. 280]) should not impose spatial limitations (*Wimberly, supra,* at pp. 568–571), the court held: "A search based on probable cause which reasonably only tends to support the inference that contraband or evidence will be found in the passenger compartment will be of intolerable intensity and scope if expanded to include a closed trunk. In such a situation there must be some specific articulable facts which give reasonable cause to believe that seizable items are, in fact, concealed in the trunk. [Citations.]" (*Id.* at p. 568.) Distinguishing "dealers" from "casual users," it reasoned: "Here, the erratic driving, the plain view observation of the marijuana seeds adjacent to the pipe, the odor of burnt marijuana, the burnt residue in the pipe, and the small quantity of marijuana secreted in the jacket indicate only that petitioners were casual users of marijuana. It was thus proper to search adjacent areas of the vehicle [citation], but it was not reasonable to infer that petitioners had additional contraband hidden in the trunk." (*Id.* at p. 572, fn. omitted.)

Before examining the continuing validity of *Wimberly*, we must find error in the grant of suppression here because the presence of a known drug dealer in the front seat of the car, together with other facts, easily provided what *Wimberly* required, i.e., "specific articulable facts which give reasonable cause to believe that seizable items are, in fact, concealed in the trunk" (*Wimberly, supra,* at p. 568).[5] If the magistrate's reluctance to uphold this search was based on arrest strictures, he had only to consult *Wimberly*, which explained, as the People had correctly urged, that "spatial limitations to searches incident to lawful arrests" are "inapplicable to searches of automobiles based upon probable cause" (*id.* at p. 569, fn. 6).

On *Wimberly*'s validity, we agree with *Dey*'s rejection of both it and a decision (*People v. Gregg* (1974) 43 Cal.App.3d 137 [117 Cal.Rptr. 496]).

---

[5] As the People note, other facts taking this out of the personal-use-only category include suspicious movements and looks from the backseat driver, defendant's saying he owned the car yet had no key to the trunk, lack of any odor or smoking device in the passenger area, the street-type packaging of the ashtray marijuana, and the presence of a small logo-bearing bag in front with a larger bag in the back holding only residue. The bags allowed a reasonable inference that the larger one had held smaller bags and that, given a known drug dealer in the front seat, there could be more in the trunk. *Wimberly* itself cautioned: "We do not conclude . . . that trunk searches are never justified when the quantity of contraband found [in the passenger area] is indicative only of personal use. Rather, we recognize that additional circumstances may generate the reasonable suspicion necessary to justify the further intrusion." (*Wimberly, supra,* 16 Cal.3d at p. 573.)

*Wimberly* endorsed: "Subsequent to these decisions the United States Supreme Court articulated the standard that courts should apply in deciding whether the warrantless search of a vehicle is reasonable under the federal Constitution. It held in [*Ross*] that '[i]f probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search.' [¶] The holdings of *Gregg* and *Wimberly* have never been expressly repudiated. However, in light of *Ross* and the enactment of article I, section 28, subdivision (d) to the California Constitution, we do not think these holdings have continued vitality, and it is *Ross* to which we must adhere." (*Dey, supra,* 84 Cal.App.4th at pp. 1321–1322, fns. omitted.)

We add that the heightened expectation of privacy for concealed areas that underlay *Wimberly*'s rejection of the trunk search has been rejected by the federal high court as an impractical limitation. *Ross* implicitly acknowledged varying expectations but explained: "A warrant to search a vehicle would support a search of every part of the vehicle that might contain the object of the search. When a legitimate search is under way, and when its purpose and its limits have been precisely defined, nice distinctions . . . between glove compartments, upholstered seats, trunks, and wrapped packages, in the case of a vehicle, must give way to the interest in the prompt and efficient completion of the task at hand." (*Ross, supra,* 456 U.S. at p. 821, fn. omitted.) *Ross* also observed: "Contraband goods rarely are strewn across the trunk or floor of a car; since by their very nature such goods must be withheld from public view, they rarely can be placed in an automobile unless they are enclosed within some form of container." (*Id.* at p. 820, fn. omitted.) The California high court has acknowledged this policy shift since *Ross* and, in a trunk search case applying former law to a pre-*Ross*/Proposition 8 search, declared that the privacy distinction survives but only as a matter of independent state constitutional law (*People v. Ruggles* (1985) 39 Cal.3d 1, 11–13 & fn. 4 [216 Cal.Rptr. 88, 702 P.2d 170]). Invalidating a search of items found in a trunk (yet upholding a passenger area search), the court declared: "Each day millions of Californians drive in automobiles, often taking with them, inside briefcases or other similar luggage, items of a highly personal or confidential nature. Permitting such containers to be searched on the basis of probable cause alone deprives the owner of the added protections of a warrant." (*Id.* at p. 12, fn. omitted.) That this distinction may live on as *state* law in this post-Proposition 8 case, of course, would not help defendant, for Proposition 8 leaves intact the substantive scope of state constitutional law but removes the remedy of suppression (*People v. McKay* (2002) 27 Cal.4th 601, 618–619 [117 Cal.Rptr.2d 236, 41 P.3d 59]).

■ Thus there is no federal constitutional support for *Wimberly*'s privacy-based requirement of special justification for searching a car trunk *(Wimberly, supra,* 16 Cal.3d at p. 568). *Ross* "rejected [the] distinction between containers and cars. It concluded that the expectation of privacy in one's vehicle is equal to one's expectation of privacy in the container, and noted that 'the privacy interests in a car's trunk or glove compartment may be no less than those in a movable container.' [Citation.]" *(California v. Acevedo* (1991) 500 U.S. 565, 573 [114 L.Ed.2d 619, 111 S.Ct. 1982].) "[A]n individual's expectation of privacy in a vehicle and its contents may not survive if probable cause is given to believe that the vehicle is transporting contraband." *(Ross, supra,* 456 U.S. at p. 823.) "The scope of a warrantless search of an automobile thus is not defined by the nature of the container in which the contraband is secreted. Rather, it is defined by the object of the search and the places in which there is probable cause to believe that it may be found." *(Id.* at p. 824.)

■ The question here then was whether, having not just probable cause but having actually found that defendant's car was transporting contraband, the officers had reason to believe it could also be concealed in the trunk. Exercising our independent review, we have already answered that question, yes, even under *Wimberly*'s heightened scrutiny.

The magistrate protested in suppressing the evidence, "I'm not going to follow *D*[*e*]*y* just willy-nilly, that any presence of marijuana in the passenger compartment of a vehicle supports a trunk search," but this was an oversimplification. It may be that in the usual drug case, probable cause established by a substantial amount of drugs found in the passenger area will extend to possible drugs in the trunk (e.g., *People v. Hunt* (1990) 225 Cal.App.3d 498, 503, 509 [275 Cal.Rptr. 367]; *People v. Varela* (1985) 172 Cal.App.3d 757, 762 [218 Cal.Rptr. 334]; see cases collected 3 LaFave, Search and Seizure (4th ed. 2004) Search and Seizure of Vehicles, § 7.2(c), pp. 564–565 & fn. 109 (hereafter LaFave)), but that result is not inevitable or "willy-nilly." The federal high court has explained, quoting *Ross:* " 'Probable cause to believe that a container placed in the trunk of a taxi contains contraband or evidence does not justify a search of the entire cab.' [Citation.] We reaffirm that principle. In the case before us, the police had probable cause to believe that [a] paper bag in the automobile's trunk contained marijuana. That probable cause now allows a warrantless search of the paper bag. . . . [T]he police did not have probable cause to believe that contraband was hidden in any other part of the automobile and a search of the entire vehicle would have been without probable cause and unreasonable under the Fourth Amendment." *(California v. Acevedo, supra,* 500 U.S. at p. 580, quoting *Ross, supra,* 456 U.S. at p. 824.) In that case, police watching an apartment where marijuana sales occurred saw the defendant enter, stay 10 minutes, leave with a full-looking brown bag suspected to be marijuana, and place it in the trunk

of his car. (*California v. Acevedo, supra,* 500 U.S. at p. 567; see also *People v. Chavers* (1983) 33 Cal.3d 462, 470 [189 Cal.Rptr. 169, 658 P.2d 96] [under *Ross,* cause to search for a stolen television would not justify searching the glove compartment; cause to search for ID would extend to glove compartment but not opening car's seat cushions].)

There was nothing in the circumstances of the discovery of the marijuana in the passenger area of defendant's car that foreclosed more drugs being found in the trunk as well, and marijuana is a drug that can be concealed in a variety of containers that might be concealed in a trunk. We acknowledge the People's citation to a treatise collecting cases from other jurisdictions that criticize *Wimberly*'s dealer/casual user distinction as illogical and unworkable.[6] The facts here are so different, however, that it is unnecessary to quibble about such dictum in *Wimberly.* Here, the casual-use-only theory, even if it could be squared with *Ross,* was nullified by the presence of a *known drug dealer* in the front seat.

A troubling aspect of this case is a disregard of stare decisis by both courts below. *Dey* was the only appellate decision to address and resolve the tension between *Wimberly* and later search law developments. *Dey* held that the very aspect of *Wimberly* that the lower courts would rely on here was no longer the controlling law. The rejection of *Dey* violated these principles: "Decisions of every division of the District Courts of Appeal are binding upon all the justice and municipal courts and upon all the superior courts of this state, and this is so whether or not the superior court is acting as a trial or appellate court. Courts exercising inferior jurisdiction must accept the law declared by courts of superior jurisdiction. It is not their function to attempt to overrule decisions of a higher court. [Citations.]" (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937].) A lower court may and must choose between competing views when faced with a conflict in appellate authority, of course (*id.* at p. 456), but there was no conflict here. *Dey* was the only authority on point and thus was binding. It was error not to follow it.

---

[6] "[R]ecent cases of this genre have in the main rejected the *Wimberly* approach. In doing so, they have labeled the user-dealer distinction in this context as 'illogical and unreasonable' because it is untrue 'that users, whether occasional, regular, or habitual, are *not* likely to hide additional contraband in the trunk.' Also, it is argued that police should not be burdened 'with having to make another judgment call—whether a certain amount of marijuana, cocaine, or other drug found on a person or in some container makes the person a casual user or a dealer.' " (LaFave, *supra,* at pp. 567–568, fns. omitted.)

DISPOSITION

The order denying reinstatement is reversed.

Haerle, Acting P. J., and Lambden, J., concurred.