Filed 2/26/14  P. v. Waters CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>          Plaintiff and Respondent,<br><br>v.<br><br>JOSEPH WILLIAM WATERS,<br><br>          Defendant and Appellant. | A137322<br><br>(Humboldt County<br>Super. Ct. No. CR1105299) |

After a vehicle stop for an unfastened seat belt, defendant Joseph William Waters was found in possession of two handguns and a billy club.  One handgun was seen in the glove box as defendant opened it to retrieve the vehicle registration; the second gun and the billy were found during a subsequent search of the car while defendant was handcuffed in a patrol car.  Defendant entered a negotiated plea to one misdemeanor count of possession of a concealed firearm in a vehicle (Pen. Code, § 25400, subd. (a)(1))[1] and one misdemeanor count of possession of an illegal weapon (billy or blackjack) (§ 22210).  He now appeals the denial of his suppression motion (§ 1538.5, subd. (m)) and asks us to review the sealed transcript of his *Pitchess* motion[2] to determine whether there was an error in procedure and whether the trial court abused its discretion in determining there was no discoverable material.  We conclude there was no error in ruling on the suppression motion, but we remand for a new *Pitchess* hearing.

---

[1] All undesignated statutory references are to the Penal Code.

[2] *Pitchess v. Superior Court* (1974) 11 Cal.3d 531.

1

## FACTUAL AND PROCEDURAL BACKGROUND

On November 24, 2011, California Highway Patrol (CHP) Officer William Adams was on patrol on Myrtle Avenue in Eureka, having been instructed to pay particular attention to seat belt violations over the Thanksgiving holiday weekend. As he approached and traveled through the intersection at Myrtle Avenue and McFarland Street he sawdefendant's teal Mercedes sedan stopped at the intersection, in a position perpendicular to his own. He drove through the intersection at 25 to 30 miles per hour and slowed even further as he passed the Mercedes, noticing the driver's seat belt was in the "off position"—with the two parallel straps and metal buckle hanging near the driver's shoulder. Adams was about 25 to 30 feet away from the Mercedes when he saw the unbuckled seat belt, and he testified he could see clearly into defendant's passenger compartment.

Adams pulled his car into the middle turn lane after he crossed the intersection, waiting for the Mercedes to turn onto Myrtle. As the Mercedes passed his patrol car, Adams got into defendant's lane and followed him.

Adams initiated a traffic stop by turning on his emergency lights. Defendant pulled over to the right in an area where the shoulder of the road was narrow, so Adams instructed him over the public address system to continue driving to a safer place. Defendant then pulled his car into the parking lot of a drug store in a strip mall. Adams had not seen any furtive movements on defendant's part that would indicate he was belatedly buckling his seat belt.

Adams approached defendant's car from the passenger side. Defendant at that point had his seat belt fastened. Adams thought defendant had put on his seat belt sometime after the officer observed it was off. Defendant rolled down the passenger window just a crack, and Adams could not communicate with him due to the ambient noise. Adams ordered defendant several times to roll down the window farther, but defendant refused.

Adams also asked for defendant's driver's license information and told him why he had been stopped. Defendant insisted he had been driving with his seat belt buckled

2

the whole time. Adams responded, "Hey, man. The only reason I stopped you is 'cause you clearly didn't have your seat belt on." Defendant then slumped his shoulders as if to say, " 'yeah.' "

Adams then went to the driver's door and again defendant refused to roll down his window more than an inch or two. Adams asked for defendant's driver's license and the vehicle registration. Defendant produced a California identification card but told Adams the registration was locked in the glove compartment and he did not have a key. He said he would need to call a friend to bring him a key before he could get into the glove box. The officer told him to go ahead and make the call. Shortly thereafter defendant said he remembered he did have the key, and he reached over to open the glove box.

Adams was on alert because of defendant's behavior: his unwillingness to cooperate, his refusal to roll down the window, and the delay before he came up with the glove box key. When defendant opened the glove box, Adams saw the butt end of a black semi-automatic handgun inside.

After seeing that, Adams drew his weapon, made defendant exit the vehicle, handcuffed him, placed him in the patrol car, and searched his vehicle. During the search, Adams found two loaded firearms in the glove box (a 9 mm and a .380 caliber) and a billy club in the trunk. Defendant told the officer he had a concealed weapon permit for the guns, which had recently expired,[3] and that he that he used to work in security and carried the billy for protection.

On February 2, 2012, defendant was charged by information with two counts of being a convicted person in possession of a concealed firearm in a vehicle (§25400, subd. (a)(1)) and one count of possession of an unlawful weapon (billy or blackjack) (§ 22210). He filed a *Pitchess* motion on March 15, 2012, seeking discovery of all records of false arrests, false statements, or illegal search and seizure by CHP Officer Adams. The CHP opposed the motion. The court found there was a sufficient showing

---

[3] Subsequent investigation showed the permit expired about six weeks prior to the incident under review.

of good cause with respect to false statements and ordered the CHP to turn over to the court "the name, the address and the phone number of any complainant or witness, as well as the date of the incident. That would be limited to a period of five years immediately preceding the incident in this case. I would intend to do a—an in camera review." Following the court's in camera hearing, it announced in open court that there were "no records to be discovered."

On June 14, 2012, defendant filed a motion to suppress the three items of evidence seized from his car—the black 9 mm handgun found in the glove compartment, the stainless steel .380 caliber handgun found in the glove compartment, and the billy club found in the trunk—on grounds they were discovered in a warrantless search following an unlawful traffic stop and were the fruits of the poisonous tree. (§ 1538.5) The prosecution argued the search and seizure had followed a lawful detention based upon reasonable suspicion of a traffic violation. The search of the car after the first gun was spotted in the glove box was also authorized as a weapons search. Defense counsel agreed that the only issue was the legality of the stop: if the detention was lawful then defendant would not challenge the subsequent search of the car.

The motion was heard on September 10, 2012. Defendant testified at the suppression hearing that he had been wearing his seat belt the whole time he was driving the car on the date in question. He had been on his way to pick up his two daughters when he was stopped by Adams. He recalled fastening his seat belt before starting to drive. It was his custom to always buckle his seat belt so as to be a good role model for his children.

Defendant testified he saw Adams's car drive through the intersection at Myrtle Avenue and McFarland Street. He noticed Adams looking at him. His seat belt was buckled at the time.

Based on the evidence relating to the detention outlined above, the court denied the suppression motion without comment. It made no express findings of fact.

After his *Pitchess* and suppression motions were both denied, defendant entered a negotiated plea. He pled no contest to counts two and three as misdemeanors, and the

4

court ordered count one dismissed on the People's motion. Defendant was granted probation for three years on condition he serve one day in jail, with credit for one day served. This timely appeal followed.

## DISCUSSION

**Suppression motion**

When considering the denial of a motion to suppress evidence, we view the record in the light most favorable to the trial court's ruling and defer to the trial court's findings of historical fact, whether express or implied, if they are supported by substantial evidence. (*People v. Glaser* (1995) 11 Cal.4th 354, 362.) We then exercise independent judgment to decide what legal principles are relevant, independently apply them to the facts, and determine as a matter of law whether there has been an unreasonable search or seizure. (See *People v. Davis* (2005) 36 Cal.4th 510, 528-529; *People v. Ayala* (2000) 23 Cal.4th 225, 255; *People v. Glaser, supra*, 11 Cal.4th at p. 362.)

During both the preliminary hearing and the evidentiary hearing on defendant's motion to suppress, Adams testified he stopped defendant's vehicle because defendant was not wearing a seat belt while driving. A traffic stop constitutes a detention under the Fourth Amendment. (*Whren v. United States* (1996) 517 U.S. 806, 809-810.) In order to pass constitutional muster, a detention must be "based on 'some objective manifestation' that criminal activity is afoot and that the person to be stopped is engaged in that activity." (*People v. Souza* (1994) 9 Cal.4th 224, 230.) Thus, for a vehicle stop, the police officer "can legally stop a motorist only if the facts and circumstances known to the officer support at least a reasonable suspicion that the driver has violated the Vehicle Code or some other law." (*People v. Miranda* (1993) 17 Cal.App.4th 917, 926; see also, *Whren, supra*, 517 U.S. at pp. 810, 819 [a law enforcement officer may, consistent with the Fourth Amendment, briefly detain a vehicle if the objective facts indicate that the vehicle has violated a traffic law]; *People v. Castellon* (1999) 76 Cal.App.4th 1369, 1373 [expired registration]; *Kodani v. Snyder* (1999) 75 Cal.App.4th 471, 476-477 [no seat belt]; *People v. Bell* (1996) 43 Cal.App.4th 754, 760-761.) Indeed, stopping a defendant's vehicle for a seat belt violation, even if done as a pretext for a narcotics

investigation, is entirely legal. (*Arkansas v. Sullivan* (2001) 532 U.S. 769, 771-772; *Whren v. United States*, *supra*, 517 U.S. at pp. 812-813; *People v. Gomez* (2004) 117 Cal.App.4th 531, 537; *People v. Ramirez* (1997) 59 Cal.App.4th 1548, 1557, fn. 1.)

If an officer sees one weapon in plain view in a car from a position where he has a right to be, the officer is justified in continuing to search for more weapons in the passenger compartment based on reasonable belief alone that defendant is dangerous and could gain control of a weapon. (*Michigan v. Long* (1983) 463 U.S. 1032, 1049-1052; *People v. King* (1989) 216 Cal.App.3d 1237, 1239; *People v. Superior Court (Sanders)* (1979) 99 Cal.App.3d 130, 135; see also, *Minnesota v. Dickerson* (1993) 508 U.S. 366, 375 [plain view doctrine].) Where probable cause justifies the search of a lawfully stopped vehicle "it justifies the search of every part of the vehicle and its contents that may conceal the object of the search," including the trunk. (*United States v. Ross* (1982) 456 U.S. 798, 825; see also, *People v. Hunter* (2005) 133 Cal.App.4th 371, 377-381; *People v. Dey* (2000) 84 Cal.App.4th 1318, 1322.)

Applying the foregoing principles to the present facts, we find no error in the trial court's ruling. Defendant insists the record below does not contain substantial evidence from which the trial court could find that Adams had a reasonable suspicion under Fourth Amendment standards to justify the traffic stop, citing *People v. Miranda*, *supra*, 17 Cal.App.4th at p. 926 and *Whren v. United States*, *supra*, 517 U.S. at p. 810. The additional weapons found after a more thorough search, he argues, were the product of the illegal stop. We disagree.

"Substantial" evidence is that which is of ponderable legal significance, reasonable in nature, credible, and of solid value. (*People v. Taylor* (1990) 222 Cal.App.3d 612, 618.) Officer Adams's testimony about seeing defendant's unbuckled seat belt certainly qualifies as substantial evidence supporting the trial court's ruling. The fact that defendant was wearing his seat belt when the officer ultimately approached his car does not undercut that testimony in any significant way. Common experience tells us that a motorist who has been signaled to stop his vehicle may well buckle up his seat belt before the officer actually reaches his car.

6

Defendant notes that Adams did not see any furtive movements and points out that Adams admitted on cross-examination that a shadowy image across defendant's chest on a video tape of the stop could have been the seat belt. This testimony weakened but did not dispel the People's substantial evidence supporting the traffic stop.

The fact that defendant denied Adams's assertion and testified in self-serving fashion that he was wearing his seat belt the entire time was nothing but contrary evidence that the trial court was free to reject in weighing the conflicting evidence and judging its credibility. (See *People v. Johnson* (2006) 38 Cal.4th 717, 720 [determining credibility of evidence presented at hearing on § 1538.5 is for judicial officer presiding over the hearing].) The court's implicit finding that there was reasonable suspicion for the vehicle stop was supported by substantial evidence.

Moreover, once the butt of the black 9 mm handgun was spotted in defendant's glove box, Adams had the reasonable and articulable suspicion necessary to conduct a further protective search for weapons within the car. (*Michigan v. Long, supra,* 463 U.S. at pp. 1049-1052; *People v. King, supra,* 216 Cal.App.3d at p. 1239; *People v. Greer, supra,* 110 Cal.App.3d at pp. 238-239; *Sanders, supra,* 99 Cal.App.3d at p. 135.) Having found two illegally carried weapons in the passenger compartment, Adams also had probable cause to search the trunk. (*United States v. Ross, supra,* 456 U.S. at p. 825; *People v. Hunter, supra,* 133 Cal.App.4th at pp. 377-381; *People v. Dey, supra,* 84 Cal.App.4th at p. 1322.) There was no error in denying the suppression motion.

**Pitchess motion**

Defendant's second challenge is to the court's handling of his *Pitchess* motion. *Pitchess* governs the situations in which a criminal defendant is entitled to discover other complaints made against the officer who arrested or searched him. The *Pitchess* procedure is designed to enforce "the prosecution's constitutional obligation to disclose to a defendant material exculpatory evidence so as not to infringe the defendant's right to a fair trial." (*People v. Mooc* (2001) 26 Cal.4th 1216, 1225 (*Mooc*).) Defendant asks this court to review the sealed record under the procedures set forth in *Mooc* to determine whether the trial court followed proper procedure or abused its discretion in determining

7

that there were no discoverable complaints. (*Id.* at pp. 1228-1230; see also, *People v. Hughes* (2002) 27 Cal.4th 287, 330.)

Where, as here, a trial court concludes that the defendant has made a showing of good cause for discovery of complaints about an officer and orders the custodian of records to produce to the court "potentially relevant" records, the court must then examine the records produced in chambers and order disclosed "such information [as] is relevant to the subject matter involved in the pending litigation." (*Mooc*, *supra*, 26 Cal.4th at p. 1226; see also, *People v. White* (2011) 191 Cal.App.4th 1333, 1339-1340 [court must swear in custodian of records before accepting his representations about potentially relevant records]; *Mooc*, *supra*, 26 Cal.4th at pp. 1228-1229.) On appeal, the court should "itself [review] those documents (or augment the record to include those documents) and [determine] whether the trial court . . . abused its discretion in refusing to disclose any of [the officer's] records." (*Mooc*, *supra*, 26 Cal.4th at p. 1228.) But it reviews the trial court's *Pitchess* ruling only for abuse of discretion. (*People v. Hughes*, *supra*, 27 Cal.4th at p. 330.)

"A law enforcement officer's personnel record will commonly contain many documents that would, in the normal case, be irrelevant to a *Pitchess* motion, including those describing marital status and identifying family members, employment applications, letters of recommendation, promotion records, and health records. (See Pen. Code, § 832.8.) Documents clearly irrelevant to a defendant's *Pitchess* request need not be presented to the trial court for in camera review. But if the custodian has any doubt whether a particular document is relevant, he or she should present it to the trial court. . . . The custodian should be prepared to state in chambers and for the record what other documents (or category of documents) not presented to the court were included in the complete personnel record, and why those were deemed irrelevant or otherwise nonresponsive to the defendant's *Pitchess* motion." (*Mooc*, *supra*, 26 Cal.4th at p. 1229.)

In a case such as this, where it appears "the custodian of records does not produce the entire personnel file for the court's review, he or she must establish on the record what documents or category of documents were included in the complete personnel file.

8

In addition, if it is not readily apparent from the nature of the documents that they are nonresponsive or irrelevant to the discovery request, the custodian must explain his or her decision to withhold them. Absent this information, the court cannot adequately assess the completeness of the custodian's review of the personnel files, nor can it establish the legitimacy of the custodian's decision to withhold documents contained therein. Such a procedure is necessary to satisfy the Supreme Court's pronouncement that 'the locus of decisionmaking' at a *Pitchess* hearing 'is to be the trial court, not the prosecution or the custodian of records.' " (*People v. Guevara* (2007) 148 Cal.App.4th 62, 69.)

We have reviewed the sealed transcript of the in camera proceeding on the *Pitchess* motion. The CHP custodian of records was placed under oath and told the court there were no personnel documents responsive to the court's order. The court then said, "So with that, that moots the issue of a protective order, and I would just intend to on the record, when we come back in, advise [defense counsel] that there are no—there's no information that's pertinent to be turned over." The custodian of records was not asked to describe the documents that were withheld as nonresponsive, and did not do so on his own initiative. There is no indication in the transcript of the in camera hearing which documents, if any, the court reviewed from Officer Adams's personnel file.

The participants in the in camera hearing then returned to the courtroom and the court announced in open court: "I have conducted an under-oath, in camera review of the pertinent records, and . . . there are no records to be discovered." Although the court indicated it had reviewed "the pertinent records," neither the sealed transcript nor the court's statement in open court reveals which records it reviewed. This was error: "The trial court should . . . make a record of what documents it examined before ruling on the *Pitchess* motion. Such a record will permit future appellate review. If the documents produced by the custodian are not voluminous, the court can photocopy them and place them in a confidential file. Alternatively, the court can prepare a list of the documents it considered, or simply state for the record what documents it examined. Without some record of the documents examined by the trial court, a party's ability to obtain appellate

9

review of the trial court's decision, whether to disclose or not to disclose, would be nonexistent." (*Mooc*, *supra*, 26 Cal.4th at p. 1229.)

Our case is similar to *Mooc*: "The trial court's failure to make a record of the documents it reviewed in camera set the wheels in motion for the present dispute. Without some evidence in the record indicating what the trial court reviewed, defendant was unable to obtain meaningful appellate review of the court's decision not to disclose any evidence in response to his *Pitchess* motion. Had the trial court retained copies of the documents it examined before ruling on the *Pitchess* motion, made a log of the documents it reviewed in camera, or just stated for the record what documents it examined (such transcript, of course, to be sealed), the Court of Appeal could have itself reviewed those documents (or augmented the record to include those documents) and determined whether the trial court had abused its discretion in refusing to disclose any" documents from the officer's file. (*Mooc*, *supra*, 26 Cal.4th at p. 1228.)

No documents are contained in the sealed record. Based on the lack of a record of which documents, if any, the court reviewed, and which documents were withheld by the custodian of records and why, we find the procedure employed to be wanting. We will therefore conditionally reverse the judgment and remand for a new *Pitchess* hearing.

## DISPOSITION

The judgment is conditionally reversed. The cause is remanded to the trial court with directions to hold a new in camera hearing on defendant's *Pitchess* motion in conformance with the procedures described in this opinion. If the trial court finds there are discoverable records, they shall be produced and the court shall conduct such further proceedings as are necessary and appropriate. If the court again finds there are no discoverable records, or that there is discoverable information but defendant cannot establish that he was prejudiced by the denial of discovery, the judgment shall be reinstated as of that date. (*People v. Wycoff* (2008) 164 Cal.App.4th 410, 415.)

_____
Richman, J.

We concur:


_____
Kline, P.J.


_____
Haerle, J.