Filed 7/25/23

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| THE PEOPLE, | C096463 |
| Plaintiff and Respondent, | (Super. Ct. No. STK-CR-FE-2021-0003370) |
| v. | |
| HILARIO LEAL, JR., | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Joaquin County, Lance G. Jacot, Judge. Reversed with directions.

Paul R. Kleven, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Eric L. Christoffersen, Clara M. Levers and Jessica A. Perkins, Deputy Attorneys General, for Plaintiff and Respondent.

The Fourth Amendment's guarantee of the right to be free from unreasonable searches and seizures is fundamental to our sense of liberty and justice. (U.S. Const., 4th Amend.) The general rule is that warrantless searches are unreasonable. (*Katz v. United States* (1967) 389 U.S. 347, 357.) Certain circumstances, however, create exceptions to the general ban on warrantless searches. (*Ibid*.) One such exception—the automobile exception—is the focus of this appeal.

"The automobile exception provides 'police who have probable cause to believe a lawfully stopped vehicle contains evidence of criminal activity or contraband may conduct a warrantless search of any area of the vehicle in which the evidence might be found.' " (*People v. McGee* (2020) 53 Cal.App.5th 796, 801, quoting *People v. Evans* (2011) 200 Cal.App.4th 735, 753.) The scope of a warrantless search is "defined by the object of the search and the places in which there is probable cause to believe that it may be found." (*United States v. Ross* (1982) 456 U.S. 798, 824 (*Ross*).) In deciding whether a warrantless search was justified under the automobile exception, the facts are determinative. That is because probable cause exists "where the known facts and circumstances are sufficient to warrant a man of reasonable prudence in the belief that contraband or evidence of a crime will be found." (*Ornelas v. United States* (1996) 517 U.S. 690, 696.)

Here, the searching police officer received information via a radio broadcast from another officer that a juvenile on probation with a firearm restriction likely placed a firearm under the front passenger seat in defendant Hilario Leal, Jr.'s car before defendant got into his car and drove away. Defendant's car was under constant surveillance from the time of the alleged firearm placement until the searching officer conducted the search. When a search of the passenger compartment of defendant's car yielded no firearm, the searching officer decided to search the trunk, where he discovered a firearm. Defendant was charged with several offenses and filed a motion to suppress the firearm; the trial court denied the motion. Defendant ultimately pled no contest to

being a felon in possession of a firearm.  The question presented is whether the search of defendant's *trunk* was justified under the automobile exception.  We conclude it was not.

We hold that when an officer has probable cause to believe contraband or evidence of a crime will be found specifically in the passenger compartment of a vehicle (as compared to having probable cause to believe it will be found somewhere in the vehicle), and no other subsequent discovery or information provides further probable cause to believe the evidence will be found in the trunk, an officer's search of the trunk exceeds the permissible scope of a warrantless search under the automobile exception. We accordingly reverse the judgment with directions to set aside the order denying defendant's motion to suppress, enter an order granting the motion, and allow defendant to move to withdraw his plea.

## FACTUAL AND PROCEDURAL BACKGROUND

Before we lay out the facts pertaining to the search, we note that, on the date of the challenged search, Detective Edgar Guillen of the Stockton Police Department relayed the entirety of his observations to other police officers via radio broadcast, including to Stockton Police Officer Daniel Velarde, who conducted the search of defendant's car. Officer Velarde based his search on Detective Guillen's observations, as relayed via the radio broadcast; however, during his testimony at the motion to suppress hearing, Officer Velarde could not recall all of Detective Guillen's observations.  We thus substantially set forth the testimony elicited from Detective Guillen at the hearing on defendant's motion to suppress.

On April 1, 2021, a team of police officers, including Detective Guillen, were surveilling a funeral because the officers expected a criminal street gang connected to prior shootings to be in attendance.  Detective Guillen was in an unmarked vehicle and wearing plain clothes; his role was to relay his observations regarding any disturbances, altercations, violence, or armed individuals to the other officers via radio broadcast. During his surveillance, Detective Guillen recognized a juvenile based on photographs he

3

had seen and prior conversations he had had with other detectives as a result of a recent shooting at the juvenile's home. He was aware the juvenile was on searchable probation with a firearm restriction.

Detective Guillen believed the juvenile was carrying a firearm because the juvenile was holding his waistband as he was walking. Detective Guillen also saw an unidentifiable object protruding from the juvenile's right front waistband and knew individuals typically conceal firearms in that location. At one point, Detective Guillen saw the juvenile approach a woman and point toward the object with his head. The juvenile was also walking as if he was trying to prevent the object in his waistband from causing his pants to fall. After Detective Guillen relayed these observations to the rest of the surveillance team over the radio, another officer confirmed via radio broadcast that he was able to clearly see a black handgun in the juvenile's waistband.

The juvenile then contacted defendant and a woman, and the three of them walked toward defendant's car and stopped by the driver's side. The juvenile walked toward the car's closed trunk, looked around, and then walked back toward the grave site. Detective Guillen did not see the juvenile open the trunk. Shortly after the juvenile walked back to the grave site, defendant and the woman drove away, turned on a "little inner street," turned again at an intersection, and then drove back toward the grave site, stopping just short of it. The juvenile then approached defendant's parked car for a second time. Detective Guillen believed the juvenile still had the firearm at that point based on the way he was holding his waistband.

The juvenile walked toward the car's trunk, at which point Detective Guillen's view "was kind of obstructed" for 10 to 15 seconds. Detective Guillen then saw the juvenile walk away from the trunk with his hand on his waistband. He opened the rear driver's side door and sat down, appearing stiff in the waistband area unlike how "a normal person would sit down" and bend at the waist. The juvenile laid down in the car, reached toward his waistband, and turned toward the front seats—away from Detective

4

Guillen—while moving his hand up toward his chest. Detective Guillen could not see what the juvenile had in his hand, but when the juvenile got out of the car, he no longer looked stiff. These observations, in conjunction with the fact that the juvenile adjusted his pants and walked away from defendant's car without holding his waistband, led Detective Guillen to believe the juvenile had placed the firearm underneath the front passenger seat in defendant's car. Detective Guillen broadcast these observations over the radio. At no point during Detective Guillen's surveillance did he see defendant's trunk open.

When defendant got into the driver's seat of his car, Detective Guillen broadcast a description of defendant's car, the license plate number, and the number of occupants, and requested that officers follow defendant until an enforcement stop could be conducted in a marked patrol car. Surveillance units followed defendant and saw him park his car at a barbershop and go inside. Officer Velarde arrived at the barbershop to perform the search of defendant's car, which was under constant surveillance from the time it left Detective Guillen's view until Officer Velarde arrived.

Officer Velarde detained defendant as he came out of the barbershop and told defendant he would be searching defendant's car. Defendant "became nervous and began to tell [Officer Velarde] that he didn't want [Officer Velarde] searching the car." Officer Velarde proceeded with the search of the passenger compartment, where he found a liquor bottle under the passenger seat. When he did not find a firearm in the passenger compartment, he "recall[ed] the surveillance units advising . . . about the trunk area" and decided to search the trunk. Specifically, Officer Velarde testified that "surveillance units advised [him] that the males [who] were seen armed with the handgun were around the vehicle, including the trunk of the vehicle." Officer Velarde found "a loaded Glock handgun" in defendant's trunk.

As explained *ante*, Officer Velarde testified he could not recall hearing each fact elicited during Detective Guillen's testimony. Relevant here, Officer Velarde testified he

5

could not recall hearing information about where the firearm would be in defendant's car, or that Detective Guillen thought the juvenile might have placed it underneath the passenger seat. He did, however, after listening to Detective Guillen's radio broadcast search the passenger compartment first and only proceeded to search the trunk when he did not find the firearm in the passenger compartment.

Officer Velarde further testified that, although he never heard via Detective Guillen's radio broadcast that anyone had accessed defendant's trunk, he was aware the trunk of defendant's car—a Honda Civic—could be accessed from the passenger compartment. Officer Velarde based this knowledge on his prior experience searching Honda Civics and having family members who own Honda Civics. Officer Velarde explained: "Once you open the trunk -- so, if you're facing the trunk, there [are] levers on top. You pull the levers to unlock the seats. What it does, it doesn't automatically fold down[,] . . . you have to physically go around. But it lets you basically bring them down like a bed." Officer Velarde clarified the seats must be accessed from the passenger compartment and manually folded down. Officer Velarde could not confirm whether defendant's back passenger seats were locked or unlocked when he searched the car, but said once the seats are unlocked, they can remain unlocked indefinitely.

Stockton Police Officer Oscar Ochoa assisted Officer Velarde in the stop and also searched the passenger compartment of defendant's car. Officer Ochoa testified the information relayed via the broadcast was that detectives "observed a suspect enter the vehicle with a firearm."

The trial court found the search of defendant's trunk lawful and denied defendant's motion to suppress the firearm based on Detective Guillen's observations, his inability to see the juvenile for 10 to 15 seconds while the juvenile was near defendant's trunk, and Officer Velarde's knowledge that "access . . . can be had between the passenger compartment and the trunk area."

6

Following the denial of defendant's motion to suppress, defendant pled no contest to being a felon in possession of a firearm. The trial court suspended imposition of the sentence for one year and placed defendant on informal probation. Defendant appeals and asserts the trial court erred in denying his motion to suppress the firearm.

DISCUSSION

Defendant argues the search of his trunk violated his Fourth Amendment rights because there was no probable cause to believe a firearm would be found in the trunk. The People argue there was probable cause to search defendant's trunk based on the following facts: the juvenile, who appeared to be carrying a firearm, was near the trunk and "[t]he observing officer could not see the juvenile's actions in the trunk area" at one point; the juvenile got into defendant's car, appeared to remove something from his waistband, and then got out of the car appearing as if he no longer had the firearm; the trunk could be accessed from the backseat; and the searching officer did not find a firearm in the passenger compartment. We agree with defendant that there was no probable cause to search the trunk.

In reviewing a trial court's ruling on a motion to suppress, " ' " '[w]e defer to the trial court's factual findings, express or implied, where supported by substantial evidence. In determining whether, on the facts so found, the search or seizure was reasonable under the Fourth Amendment, we exercise our independent judgment.' " ' " (*People v. Johnson* (2018) 21 Cal.App.5th 1026, 1031.) Here, the facts are undisputed, and the trial court did not make any factual findings as to credibility or conflicting testimony or evidence. We thus exercise our independent judgment based on the evidence to determine whether defendant's Fourth Amendment rights were violated.

In determining whether probable cause to search exists, we look at the totality of the circumstances. (*People v. Tousant* (2021) 64 Cal.App.5th 804, 815.) Our review is limited to the facts and circumstances known *to the searching officer*. (*Henry v. United States* (1959) 361 U.S. 98, 102.) "[P]robable cause [to] search exists when an officer is

7

aware of facts that would lead a [person] of ordinary caution or prudence to believe, and conscientiously to entertain, a strong suspicion that the object of the search is in the particular place to be searched."  (*Wimberly v. Superior Court* (1976) 16 Cal.3d 557, 571 (*Wimberly*).)

A survey of cases applying the automobile exception reveals courts generally find warrantless searches of trunks and other enclosed compartments in a vehicle justified in three categories of circumstances:  (1) officers have probable cause to believe contraband or evidence of a crime will be found specifically in the trunk or other enclosed compartment; (2) a search of the passenger compartment reveals contraband or other evidence generating further probable cause to search the trunk or other enclosed compartment; or (3) probable cause exists as to the entire car (i.e., that the contraband or evidence of a crime will be found somewhere in the car).  The search of the trunk here does not fit within any of these categories.

Facts that create probable cause to believe contraband or evidence of a crime will be found specifically in the trunk or other enclosed compartment often involve situations where officers see the defendant access the area and either place the evidence in the area or remove the evidence from the area.  (See, e.g., *People v. Superior Court (Gilbert)* (1981) 116 Cal.App.3d 450, 454 [probable cause existed to search the car's engine compartment when an officer saw the defendant place a plastic baggie in the engine compartment and then close the hood, and the smell of phencyclidine emanated from the engine compartment]; *People v. Guy* (1980) 107 Cal.App.3d 593, 596-599 [upholding a search of the defendant's trunk based on the defendant evading officers, crashing into a parked car, stopping at a dead end, and frantically rummaging through the trunk, and officers finding a wooden box containing marijuana that had been thrown from the trunk as well as seeing a plastic bag filled with a white powdery substance in the open trunk]; *People v. Mendez* (1973) 35 Cal.App.3d 606, 608-609 [finding probable cause to search under the hood of the defendant's car when an officer observed the defendant complete

8

multiple drug transactions by retrieving something from the radiator area under the hood, placing it in his mouth, and then removing it from his mouth to give to another person]; *People v. Green* (1971) 15 Cal.App.3d 766, 769, 771-773 [finding probable cause to search under the hood of a car when multiple people saw the defendant place a golf bag containing a shotgun under the hood].)

No such facts are present here. The probable cause for the warrantless search of defendant's car was based entirely on Detective Guillen's observations of the juvenile. The record clearly establishes Detective Guillen never saw defendant's trunk open, nor did he see anyone access the trunk in any manner. Rather, Detective Guillen believed the firearm would be found in the passenger compartment, specifically underneath the passenger seat, and that is what he broadcast to the other officers, including to the searching officer, Officer Velarde. Defendant did not take any action himself to suggest he had contraband in the car, and his nervousness about the search certainly did not, in and of itself, establish probable cause to search the trunk. (*People v. Moore* (2021) 64 Cal.App.5th 291, 302 ["Nervousness by itself . . . does not establish probable cause"].)

The fact that the juvenile was *near* the trunk of defendant's car when Detective Guillen was unable to see the juvenile for 10 to 15 seconds does not support a finding of probable cause to believe the firearm was placed *in* the trunk. In fact, Detective Guillen thought the juvenile was still carrying the firearm in his waistband when he walked away from the trunk and got into the backseat of defendant's car. Were the juvenile's actions with respect to the trunk suspicious? Sure. But that is not the standard by which we measure whether a warrantless search was justified. Even if the juvenile's conduct raises a reasonable suspicion that he was interested in placing the firearm in the trunk, "[p]robable cause is a more demanding standard than mere reasonable suspicion." (*People v. Lee* (2019) 40 Cal.App.5th 853, 862.) An objectively reasonable officer would not believe, based on the facts relayed by Detective Guillen, that the juvenile placed the

9

firearm *in* the trunk during the 10 to 15 seconds that Detective Guillen's view was obstructed.

Similarly, Officer Velarde's testimony that "surveillance units advised [him] that the males [who] were seen armed with the handgun were around the vehicle, including the trunk of the vehicle," did not provide probable cause to conduct the warrantless search of defendant's trunk. Being armed while standing *near* or *around* the trunk of a vehicle, without more, does not create probable cause to believe the weapon will be found *in* the trunk. Such a broad probable cause proposition has never been the law. If that were the test, it would eviscerate the requirement of probable cause that the searching officer reasonably believe contraband will be found *in the particular place to be searched*. (See *Wimberly*, *supra*, 16 Cal.3d at p. 564 ["probable cause for a search exists where an officer is aware of facts that would lead a man of ordinary caution or prudence to believe, and conscientiously to entertain, a strong suspicion that the object of the search is in the particular place to be searched"].)

The People rely on the fact, as the trial court did, that Officer Velarde testified it is possible to access the trunk from the passenger compartment in Honda Civics. The People believe this testimony establishes the juvenile had access to the trunk and thus the search of the trunk was based on probable cause. We disagree.

Nothing in the record suggests the juvenile accessed the trunk from the passenger compartment or that defendant's backseat was unlocked or laid down such that it was possible for the juvenile to access the trunk. Indeed, when Detective Guillen saw the juvenile in defendant's car, his back was facing the trunk, and he reached in front of him toward the front driver and passenger seats. The fact that both Officer Ochoa and Officer Velarde searched the passenger compartment first indicates they were aware Detective Guillen expected the firearm to be in that area. Officer Velarde did not testify that he found the backseat down or unlocked, nor did he testify that he heard Detective Guillen broadcast that he saw someone unlock the backseat or fold it down. These facts do not

10

"warrant a prudent man in believing" that a firearm or any other contraband would be found in the trunk. (*Henry v. United States*, *supra*, 361 U.S. at p. 102.)

The facts here also do not fall within the second category of cases in which probable cause to search a trunk exists based on contraband or evidence of a crime found during a search of the passenger compartment. (See, e.g., *People v. Hunter* (2005) 133 Cal.App.4th 371, 374-375, 382 (*Hunter*) [a search of the passenger compartment revealing marijuana in a knotted sandwich bag when the defendant was a "known street drug dealer" and the rear passenger was on parole established probable cause to believe additional marijuana would be found in the trunk]; *People v. Dey* (2000) 84 Cal.App.4th 1318, 1322 (*Dey*) [holding once contraband is discovered in the passenger compartment, the trunk may be searched for additional contraband]; *People v. Nonnette* (1990) 221 Cal.App.3d 659, 662-663, 668-669 [a search of the passenger compartment revealing small baggies, a prescription bottle containing cocaine, 16 cross-top pills, pieces of pills, $1,229 in cash, 9.4 grams of cocaine, and a pager generated probable cause to believe additional drugs would be found in the trunk].)

In fact, the opposite is true in this case. Neither Officer Ochoa nor Officer Velarde found any contraband or evidence of a crime in the passenger compartment. Officer Velarde found only a bottle of liquor underneath the passenger seat. The record does not indicate whether the bottle was open, nor does it indicate that Officer Velarde attached any significance to the bottle as he did not, during his testimony, recall finding the bottle in the passenger compartment. There are also no facts indicating Officer Velarde suspected defendant was intoxicated or driving under the influence, or that Officer Velarde smelled alcohol emanating from the car. For these reasons, we do not consider whether discovery of the liquor bottle generated probable cause to search the trunk.

The third and final circumstance in which probable cause to search an enclosed compartment like a trunk exists is when an officer has probable cause to believe

11

contraband or evidence of a crime will be found somewhere in the car (i.e., the probable cause extends to the entire car). (See, e.g., *People v. Chavers* (1983) 33 Cal.3d 462, 467, 470 [the search of a glove compartment was proper because "the record establishe[d] that the officers had probable cause to believe that seizable items, including the fruits of the robbery and the gun used to accomplish it, were concealed somewhere in the car, including its glove compartment and the shaving bag found therein"].) The People appear to contend, without citation to legal authority, that this was the circumstance here because "when Officer Velarde did not locate a firearm in the passenger compartment, the only remaining place it could be located was the trunk." We disagree.

This case is not like *Fraijo*, for example, where the officers had probable cause to believe contraband would be found somewhere in the defendant's car. (*People v. Fraijo* (1977) 78 Cal.App.3d 977, 982.) In that case, the defendant ran a red light and then fled at high speed after a police officer activated his lights and siren. (*Id*. at p. 979.) After a brief high-speed chase, the defendant stopped in a private driveway. (*Ibid*.) He got out of the car and appeared to be under the influence of narcotics. (*Id*. at p. 980.) The defendant told officers he wanted to leave his car in the driveway of the residence where it was then parked, despite the defendant having no relationship with the residents. (*Ibid*.) When additional officers arrived and approached the car, the defendant became nervous, raised his voice, and "restat[ed] several times that he 'wanted to leave his car there with the people.' " (*Ibid*.) The court concluded the defendant's attempt to avoid apprehension, his attempt to give the false impression that he was parked in a friend's driveway, and his nervous reaction when officers approached the car indicated that contraband would be found somewhere in the car and justified a search of the defendant's trunk when the officers did not find anything in the passenger compartment. (*Id*. at pp. 981-982.) In contrast to the *somewhere in the car* probable cause found to exist in *Fraijo*, here, Officer Velarde had probable cause to believe a firearm would be found

*specifically* in the passenger compartment. Probable cause is not a guarantee that contraband exists; nor is it a guarantee that it will be found *somewhere*.

We further reject the People's position that, despite the lack of probable cause to believe that the firearm was located somewhere in defendant's car, *Ross* "controls in this case." In *Ross*, a reliable informant told a detective the defendant was selling narcotics that he kept in the trunk of his car. (*Ross*, *supra*, 456 U.S. at p. 800.) The informant had just seen the defendant perform a sale, and the defendant "had told him that additional narcotics were in the trunk." (*Ibid.*) The detective found the defendant's car based on a detailed description from the informant. (*Ibid.*) Police officers pulled the defendant over and saw a bullet on the car's front seat. (*Id.* at p. 801.) An officer then "searched the interior of the car and found a pistol in the glove compartment." (*Ibid.*) The defendant was arrested and handcuffed. (*Ibid.*) The officer next searched the trunk and found a closed brown paper bag containing glassine bags with a white powder in them. (*Ibid.*) Later, at the police station, the officer further found a zippered red leather pouch in the trunk containing $3,200 in cash. (*Ibid.*) The defendant was charged with possession of heroin with intent to distribute. (*Ibid.*)

The defendant moved to suppress the evidence found in the trunk of his car—i.e., the heroin found in the paper bag and the currency found in the leather pouch. (*Ross*, *supra*, 456 U.S. at p. 801.) The United States Supreme Court framed the question as "whether, in the course of a legitimate warrantless search of an automobile, police are entitled to open containers found within the vehicle." (*Id.* at p. 817.)

The *Ross* court explained: "A lawful search of fixed premises generally extends to the entire area in which the object of the search may be found and is not limited by the possibility that separate acts of entry or opening may be required to complete the search. Thus, a warrant that authorizes an officer to search a home for illegal weapons also provides authority to open closets, chests, drawers, and containers in which the weapon might be found. A warrant to open a footlocker to search for marihuana [*sic*] would also

13

authorize the opening of packages found inside.  A warrant to search a vehicle would support a search of every part of the vehicle that might contain the object of the search. When a legitimate search is under way, and when its purpose and its limits have been precisely defined, nice distinctions between closets, drawers, and containers, in the case of a home, or between glove compartments, upholstered seats, trunks, and wrapped packages, in the case of a vehicle, must give way to the interest in the prompt and efficient completion of the task at hand." (*Ross*, *supra*, 456 U.S. at pp. 820-821.)  The United States Supreme Court held "that the scope of the warrantless search authorized by [the automobile exception] is no broader and no narrower than a magistrate could legitimately authorize by warrant.  If probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search." (*Id*. at p. 825.)

Although the foregoing holding is rather broadly worded, the United States Supreme Court explained in greater detail:  "The scope of a warrantless search of an automobile . . . is not defined by the nature of the container in which the contraband is secreted.  Rather, it is defined by the object of the search and *the places* in which there is probable cause to believe that it may be found.  Just as probable cause to believe that a stolen lawnmower may be found in a garage will not support a warrant to search an upstairs bedroom, probable cause to believe that undocumented [immigrants] are being transported in a van will not justify a warrantless search of a suitcase.  *Probable cause to believe that a container placed in the trunk of a taxi contains contraband or evidence does not justify a search of the entire cab.*" (*Ross*, *supra*, 456 U.S. at p. 824, italics added.)

14

We agree with the Fifth Circuit Court of Appeals[1] that, when *Ross* is read in its entirety and within the context of the issue before the court, particularly with respect to the foregoing paragraph, the United States Supreme Court "made a distinction between probable cause to believe that [contraband is] in a particular section of the car, and probable cause to believe that [contraband is] generally within the car." (*United States v. Seals* (5th Cir. 1993) 987 F.2d 1102, 1107, fn. 8.) The *Seals* court explained: "In *Ross*, the [United States Supreme] Court stated, 'probable cause to believe that a container placed in the trunk of a taxi contains contraband or evidence does not justify a search of the entire cab.' [Citation.] Whereas on the next page, the [United States Supreme] Court states, 'if probable cause justifies a search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search.' [Citation.] Thus, if officers have probable cause to believe that contraband is in only one part of a car, then they are limited to that area [including any containers therein that may contain the contraband]. If, on the other hand, officers have probable cause to believe that contraband is located somewhere in a car, but they don't know exactly where, then they can search the entire vehicle [and all containers therein that may contain the contraband]." (*Seals*, at p. 1107, fn. 8, quoting *Ross*, *supra*, 456 U.S. at pp. 824, 825.)

Other courts have agreed with the *Seals* court's interpretation of *Ross* as well. (*United States v. Nielsen* (10th Cir. 1993) 9 F.3d 1487, 1488, 1491 [relying on *Seals* in concluding that probable cause to search the passenger compartment did not provide probable cause to search the trunk and thus the alleged smell of burnt marijuana, without a finding of corroborating evidence during a search of the passenger compartment, did

---

[1] "[W]e are bound by decisions of the United States Supreme Court interpreting the federal Constitution [citations], we are not bound by the decisions of the lower federal courts even on federal questions," but "they are persuasive and entitled to great weight." (*People v. Bradley* (1969) 1 Cal.3d 80, 86.)

not authorize a search of the defendant's trunk]; *United States v. Turner* (D.C. Cir. 1997) 119 F.3d 18, 22 [explaining the *Seals* distinction "is at the heart of the language in *Ross*" regarding the container placed in the trunk not providing probable cause to search the entire cab]; *State v. Humble* (Mo.Ct.App. 2015) 474 S.W.3d 210, 216 [relying on *Seals* in concluding "[p]robable cause to search the passenger compartment of a vehicle does not automatically establish probable cause to search the trunk"]; *State v. Ireland* (Me. 1998) 706 A.2d 597, 600, fn. 3 [relying on *Seals* to explain, "[a]lthough . . . *Ross* is often cited for having removed distinctions between searching various parts of vehicles, the [United States] Supreme Court has placed spatial limits on vehicle searches"]; *Wilson v. State* (Md.Ct.Spec.App. 2007) 921 A.2d 881, 892 [citing *Seals* for the proposition "[t]he location-specific principle that 'probable cause must be tailored to specific compartments and containers within an automobile,' [*United States v.*] *Carter*, [(4th Cir. 2002)] 300 F.3d [415,] 422, does not apply when officers have only probable cause to believe that contraband is located somewhere within the vehicle, rather than in a specific compartment or container within the vehicle"].)

The *Seals* court's interpretation is further consistent with dicta in another United States Supreme Court case.  In *Acevedo*, the United States Supreme Court again considered the automobile exception and its application to the search of a closed container in the trunk of a car.  (*California v. Acevedo* (1991) 500 U.S. 565, 566 (*Acevedo*).)  In that case, a federal drug enforcement agent in Hawaii told an officer that he had seized a package containing marijuana and had arranged to send the package to the officer.  (*Id.* at pp. 566-567.)  The agent instructed the officer to take the package to the Federal Express office address listed on the package and arrest the person who arrived to claim it.  (*Id.* at p. 567.)  When the officer received the package, he verified the contents and took it to the appropriate Federal Express office.  (*Ibid.*)  A man arrived to claim the package and drove it to his apartment, where he took the package inside. (*Ibid.*)  The defendant arrived at the apartment later that day, entered the apartment, and

16

left carrying "a brown paper bag that looked full." (*Ibid*.) "The officers noticed that the bag was the size of one of the wrapped marijuana packages sent from Hawaii" and observed the defendant placing the bag in the trunk of his car. (*Ibid*.) The officers stopped the defendant as he drove away, opened the trunk, and found marijuana. (*Ibid*.)

The United States Supreme Court upheld the search. The court explained it was deciding "the question deferred in *Ross*: whether the Fourth Amendment requires the police to obtain a warrant to open the sack in a movable vehicle simply because they lack probable cause to search the entire car." (*Acevedo*, *supra*, 500 U.S. at p. 573.) The court concluded, "[I]t does not." (*Ibid*.) The court posited, "If the police know that they may open a bag only if they are actually searching the entire car, they may search more extensively than they otherwise would in order to establish the general probable cause required by *Ross*." (*Id*. at pp. 574-575.) The United States Supreme Court held one rule governs all automobile searches: "The police may search an automobile and the containers within it where they have probable cause to believe contraband or evidence is contained." (*Id*. at p. 580.)

The *Acevedo* court "returned once again to th[e] distinction between probable cause to believe contraband is in a specific location, and probable cause to believe that it may be in some unknown location within a vehicle." (*United States v. Turner*, *supra*, 119 F.3d at p. 22.) The court quoted *Ross*'s statement that "[p]robable cause to believe that a container placed in the trunk of a taxi contains contraband or evidence does not justify a search of the entire cab" and said it was "reaffirm[ing] that principle." (*Acevedo*, *supra*, 500 U.S. at p. 580.) The *Acevedo* court explained: "In the case before us, the police had probable cause to believe that the paper bag in the automobile's trunk contained marijuana. That probable cause now allows a warrantless search of the paper bag. The facts in the record reveal that the police did not have probable cause to believe that contraband was hidden in any other part of the automobile and a search of the entire

vehicle would have been without probable cause and unreasonable under the Fourth Amendment." (*Ibid*.)

The United States Supreme Court in *Ross* and *Acevedo* thus distinguished between instances in which there is probable cause as to the entire vehicle and instances in which there is probable cause as to only a specific compartment of the vehicle. Whereas the search in *Ross* fell into the first category because it "involved the search of a container found inside a car where 'police officers had probable cause to search [the defendant's] entire vehicle' " (*Robey v. Superior Court* (2013) 56 Cal.4th 1218, 1231, quoting *Ross*, *supra*, 456 U.S. at p. 817), this case falls into the second category because the probable cause extended only to the passenger compartment.

Detective Guillen's observations established probable cause to believe a firearm would be found *specifically* in the passenger compartment. This belief was objectively reasonable based on the following facts: (1) the juvenile was walking as if he had a firearm in his waistband; (2) an officer clearly saw a firearm in the juvenile's waistband; (3) the juvenile got into the backseat of defendant's car stiffly as if the firearm was still in his waistband; (4) the juvenile faced the front seats and reached as if placing something underneath the passenger seat; and (5) the juvenile no longer appeared stiff when he got out of defendant's car. These facts are like the facts in *Acevedo*, where the officers had probable cause to believe that contraband would be found specifically in the trunk. (*Acevedo*, *supra*, 500 U.S. at pp. 566-567.) Once Officer Velarde did not find anything in the passenger compartment, the Fourth Amendment required him to stop the search because the probable cause to search the passenger compartment did not extend to the car's trunk. (*Acevedo*, at p. 580 [probable cause to search the trunk limits the warrantless search to the trunk].)

Not only is this conclusion consistent with United States Supreme Court precedent, but it is also consistent with California Supreme Court precedent. In *Wimberly*, our Supreme Court, pre-*Ross*, addressed the assertion that "the police have a

18

right to conduct a warrantless search of the entire vehicle where there is probable cause to believe any part of it contains evidence of a crime or contraband." (*Wimberly*, *supra*, 16 Cal.3d at pp. 566-567.) The court noted, "The resolution of the issue must turn on the question whether the trunk of a vehicle is a distinct part of the car in which there is a reasonably greater expectation of privacy than the passenger compartment." (*Id.* at p. 567.) Our Supreme Court concluded, "[T]he existence of probable cause to search the interior of a car is not necessarily sufficient to justify the search of the car's trunk." (*Id.* at p. 568.) The court explained: "A search based on probable cause which reasonably only tends to support the inference that contraband or evidence will be found in the passenger compartment will be of intolerable intensity and scope if expanded to include a closed trunk. In such a situation there must be some specific articulable facts which give reasonable cause to believe that seizable items are, in fact, concealed in the trunk." (*Ibid.*)

Our Supreme Court rejected the People's "contention that there are no spatial limitations on the scope of automobile search based upon probable cause." (*Wimberly*, *supra*, 16 Cal.3d at p. 568.) The court explained that in *Carroll* and *Chambers* "the probable cause upon which the search was based applied to the vehicles *as a whole* and was not focused solely upon the passenger compartments thereof." (*Wimberly*, at p. 568, citing *Carroll v. United States* (1925) 267 U.S. 132, *Chambers v. Maroney* (1970) 399 U.S. 42.) The court further distinguished three California Supreme Court decisions on the same grounds, explaining the probable cause upon which the searches of the trunks were upheld in those cases applied to the vehicles in their entirety. (*Wimberly*, at pp. 569-570, distinguishing *People v. Laursen* (1972) 8 Cal.3d 192, *People v. Dumas* (1973) 9 Cal.3d 871, *People v. Hill* (1974) 12 Cal.3d 731.)

We are aware that *Wimberly* has been called into question "in light of *Ross* and the enactment of article I, section 28, subdivision [(f)(2)] to the California Constitution." (*Dey*, *supra*, 84 Cal.App.4th at pp. 1321-1322; see *Hunter*, *supra*, 133 Cal.App.4th at

19

pp. 379-380.)[2]  Post-*Ross*, however, the spatial limitation on the scope of warrantless automobile searches discussed in *Wimberly* remains good law.  (See, e.g., *United States v. Carter*, *supra*, 300 F.3d at p. 422 [where an officer had probable cause to conduct a warrantless search of the passenger compartment of the defendant's car based on the smell of burning marijuana, "[t]he question [wa]s whether he also had probable cause to search the locked trunk of the car and the closed suitcase inside the trunk (where the cocaine was found)" because "probable cause must be tailored to specific compartments and containers within an automobile"]; *State v. Schmadeka* (Idaho Ct.App. 2001) 38 P.3d 633, 637 ["probable cause to search the interior of a car is not necessarily sufficient to justify a search of the car's trunk"]; *United States v. Wald* (10th Cir. 2000) 216 F.3d 1222, 1228 [the mere odor of burnt methamphetamine in the passenger compartment of a vehicle does not provide probable cause to search the vehicle's trunk]; *United States v. Downs* (10th Cir. 1998) 151 F.3d 1301, 1303 [where the smell of burnt marijuana prompts a search of the passenger compartment and no controlled substances are found in that area, there is no probable cause to search the vehicle's trunk].)

The part of *Wimberly* that was called into question in *Dey* appears to pertain to our Supreme Court's holding in considering "whether there was probable cause to justify the

---

[2]  *Dey* and *Hunter* cite article I, section 28, subdivision (d) of the California Constitution.  That subdivision was redesignated as subdivision (f)(2) by amendment approved by the voters on November 4, 2008, via Proposition 9, section 4.1, but otherwise remains unchanged.  The subdivision provides:  "Right to Truth-in-Evidence.  Except as provided by statute hereafter enacted by a two-thirds vote of the membership in each house of the Legislature, relevant evidence shall not be excluded in any criminal proceeding, including pretrial and post conviction motions and hearings, or in any trial or hearing of a juvenile for a criminal offense, whether heard in juvenile or adult court.  Nothing in this section shall affect any existing statutory rule of evidence relating to privilege or hearsay, or Evidence Code [s]ections 352, 782 or 1103.  Nothing in this section shall affect any existing statutory or constitutional right of the press."  (Cal. Const., art. I, § 28, subd. (f)(2).)

particular warrantless search of the trunk of [the] petitioners' car."  (*Wimberly*, *supra*, 16 Cal.3d at p. 571; see *Dey*, *supra*, 84 Cal.App.4th at pp. 1321-1322; *Hunter*, *supra*, 133 Cal.App.4th at pp. 379-380 [agreeing with *Dey*].)  In that regard, our Supreme Court approved of *Gregg* and, distinguishing "dealers" from "casual users," held "the erratic driving, the plain view observation of the marijuana seeds adjacent to the pipe, the odor of burnt marijuana, the burnt residue in the pipe, and the small quantity of marijuana secreted in the jacket [found in the passenger compartment] indicate[d] only that [the] petitioners were casual users of marijuana" and "[i]t was thus proper to search adjacent areas of the vehicle [citation], but it was not reasonable to infer that [the] petitioners had additional contraband hidden in the trunk."  (*Wimberly*, at pp. 571-572, agreeing with *People v. Gregg* (1974) 43 Cal.App.3d 137.)

The *Dey* court held *Wimberly* and *Gregg* do not "have continued vitality" in light of *Ross* and article I, section 28, subdivision (f)(2) of the California Constitution because "a person of ordinary caution would conscientiously entertain a strong suspicion that even if [a] defendant makes only personal use of the marijuana found in his day planner [located in the passenger compartment], he might stash additional quantities for future use in other parts of the vehicle, including the trunk," "a suspicion [that] is sufficient for a search of the trunk."  (*Dey*, *supra*, 84 Cal.App.4th at pp. 1321-1322, relying on *Ross*, *supra*, 456 U.S. at p. 825 ["If probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search"].)  *Hunter* agreed with *Dey* in that regard but also noted that in the case before it "the presence of a known drug dealer in the front seat of the car, together with other facts, easily provided what *Wimberly* required, i.e., 'specific articulable facts which give reasonable cause to believe that seizable items are, in fact, concealed in the trunk' [citation]."  (*Hunter*, *supra*, 133 Cal.App.4th at p. 379.)

*Hunter* went further than *Dey*, however, in concluding that *Wimberly* was no longer good law.  The *Hunter* court said, "[T]he heightened expectation of privacy for

21

concealed areas that underlay *Wimberly*'s rejection of the trunk search has been rejected by the federal high court as an impractical limitation." (*Hunter*, *supra*, 133 Cal.App.4th at p. 380.) The appellate court relied on the statement in *Ross* that " '[a] warrant to search a vehicle would support a search of every part of the vehicle that might contain the object of the search. When a legitimate search is under way, and when its purpose and its limits have been precisely defined, nice distinctions . . . between glove compartments, upholstered seats, trunks, and wrapped packages, in the case of a vehicle, must give way to the interest in the prompt and efficient completion of the task at hand.' " (*Hunter*, at p. 380, quoting *Ross*, *supra*, 456 U.S. at p. 821.) The *Hunter* court further relied on the *Ross* court's observation that " '[c]ontraband goods rarely are strewn across the trunk or floor of a car; since by their very nature such goods must be withheld from public view, they rarely can be placed in an automobile unless they are enclosed within some form of container.' " (*Hunter*, at p. 380, quoting *Ross*, at p. 820.) Neither of the foregoing statements in *Ross* undermine our Supreme Court's holding in *Wimberly* that probable cause to search the passenger compartment, without more, does not justify a search of any other enclosed compartment, like the trunk.

It is axiomatic that an opinion is " 'not authority for propositions not considered' " and decided. (*In re Marriage of Cornejo* (1996) 13 Cal.4th 381, 388; see *Marant v. Farrell Lines, Inc.* (3d Cir. 1977) 550 F.2d 142, 146 ["it is well established that '[a] decision is not authority as to any questions of law which were not raised or presented to the court, and were not considered and decided by it, even though they were logically present in the case and might have been argued, and even though such questions, if considered by the court, would have caused a different judgment to be given' "].) In *Ross*, the United States Supreme Court considered whether the searches of the *containers in the trunk* were justified under the automobile exception when the officers *had probable cause to search the trunk*. In that vein, the United States Supreme Court's example that "[p]robable cause to believe that a container placed in the trunk of a taxi

22

contains contraband or evidence does not justify a search of the entire cab" (*Ross*, *supra*, 456 U.S. at p. 824) demonstrates the understanding that the trunk and the passenger compartment of a car are generally considered two separate locations for each of which probable cause is required, unless the probable cause extends to the entire car.  Thus, despite authorizing warrantless searches of an entire vehicle, including the trunk, compartments, and any containers found therein, when probable cause to search the entire car exists, *Ross* indicated that when probable cause to search *only a specific compartment in a vehicle exists*, exploratory searches into other areas of the vehicle are not sanctioned. It is the specific facts known to officers at the time of the search that limit the scope of the search.

The *Hunter* court also said, "[T]here is no federal constitutional support for *Wimberly*'s privacy-based requirement of special justification for searching a car trunk." (*Hunter*, *supra*, 133 Cal.App.4th at p. 381.)  The *Hunter* court presumably was referring to our Supreme Court's compartment-specific probable cause analysis because it cited the discussion on that page of our Supreme Court's *Wimberly* opinion.  (*Hunter*, at p. 381, citing *Wimberly*, *supra*, 16 Cal.3d at p. 568.)  The *Hunter* court relied on *Acevedo*'s statement that *Ross* " 'rejected [the] distinction between containers and cars.  It concluded that the expectation of privacy in one's vehicle is equal to one's expectation of privacy in the container, and noted that "the privacy interests in a car's trunk or glove compartment may be no less than those in a movable container." ' " (*Hunter*, at p. 381, quoting *Acevedo*, *supra*, 500 U.S. at p. 573.)  To the extent *Hunter* proposes that when an officer has probable cause to search the passenger compartment, the officer also has probable cause to search the trunk, we disagree.  As explained *ante*, neither *Ross* nor *Acevedo* stands for that proposition.

Finally, the *Hunter* court cited *Ruggles* for the proposition that our Supreme Court "has acknowledged [a] policy shift since *Ross* and, in a trunk search case applying former law to a pre-*Ross*/Proposition 8 search, declared that [*Wimberly*'s] privacy distinction

23

survives but only as a matter of independent state constitutional law." (*Hunter*, *supra*, 133 Cal.App.4th at p. 380, citing *People v. Ruggles* (1985) 39 Cal.3d 1, 11-13 & fn. 4.) To the extent *Hunter* intimates that the compartment-specific probable cause distinction in *Wimberly* applies only as a matter of independent state constitutional law, we again disagree. Our Supreme Court did not in *Ruggles* overrule *Wimberly*'s compartment-specific probable cause distinction; indeed, it did not even discuss it.

In *Ruggles*, the defendant challenged the denial of his motion to suppress, among other things, the warrantless search of his trunk and a briefcase and tote bags located therein. (*People v. Ruggles*, *supra*, 39 Cal.3d at p. 7.) Pertinent to the portion of *Ruggles* relied upon in *Hunter*, our Supreme Court considered whether the search *of the containers in the trunk* was justified under the automobile exception. (*Ruggles*, at pp. 9-13.) Our Supreme Court noted that *Minjares* relied on *Chadwick* to find "the warrantless search of a tote bag found in the trunk of [the] defendant's car after his arrest was unlawful under the Fourth Amendment." (*Ruggles*, at p. 9, citing *People v. Minjares* (1979) 24 Cal.3d 410, *United States v. Chadwick* (1977) 433 U.S. 1.) Our Supreme Court explained that "[s]ince *Chadwick*, [however,] the opinions of the United States Supreme Court have followed a wandering course" in terms of whether " 'a warrant generally is required before personal luggage can be searched and that the extent to which the Fourth Amendment applies to containers and other parcels depends not at all upon whether they are seized from an automobile.' " (*Ruggles*, at p. 10, quoting *Arkansas v. Sanders* (1979) 442 U.S. 753, 764, fn. 13.)

As to *Ross*, our Supreme Court said the case "d[id] not definitively determine the issue" before it, and "[r]ather than await more definitive guidance" from the United States Supreme Court in that regard, it could resolve the case under the California Constitution's " 'more exacting standard for cases arising within this state.' " (*People v. Ruggles*, *supra*, 39 Cal.3d at p. 11.) The court found the search of the containers unconstitutional under California law because, "absent consent to search or some

24

exigency requiring search without a warrant," it "imposes no undue burden upon the police, . . . to take and impound the item until a warrant is obtained." (*Id*. at pp. 12-13.) Again, " 'cases are not authority for propositions not considered.' " (*In re Marriage of Cornejo*, *supra*, 13 Cal.4th at p. 388.) The portion of *Ruggles* relied upon by the *Hunter* court does not pertain to the compartment-specific probable cause distinction discussed in *Wimberly*.

Further, our Supreme Court *post-Ross* approvingly discussed the compartment-specific probable cause analysis in *Wimberly*. (*People v. Chavers*, *supra*, 33 Cal.3d at pp. 470-471.) In *Chavers*, our Supreme Court found "the controlling principles enunciated in *Wimberly*" pertinent in considering whether an officer had probable cause to search the defendant's glove compartment. (*Id*. at p. 469.) The court explained: "Under the reasoning of *Wimberly*, the search of the glove compartment in this case was clearly proper, for [in *Chavers*], unlike that case, the police officer did have reasonable cause to believe that seizable items might be located in that compartment. As the investigating officer explained at the hearing on the suppression motion, prior to searching the glove compartment the police had ascertained that the suspects had no reliable identification on their persons; because a glove compartment is a traditional depository of a vehicle registration, the officers could reasonably believe that a search of that compartment would provide evidence of the suspects' identification. [Citations.] Moreover, because the compartment was located in such close proximity to the occupants, the officer reasonably concluded that the weapon used in the robbery might well have been hidden by the suspects in the glove compartment during the five-minute police chase of the vehicle. Thus, [our Supreme Court] agree[d] with the United States Supreme Court in *Ross* . . . that the scope and character of a vehicle search based on probable cause is limited by the reason for the search and the kind of object believed to be concealed. Probable cause to search for a stolen television set, for example, would not justify a search of the glove compartment; probable cause to search for identification

25

would extend to the glove compartment, but would not permit cutting open the car's seat cushions." (*Chavers*, at p. 470.)

To allow police officers to search outside the scope of the *particular* location or compartment within which there is probable cause to believe contraband or evidence of a crime will be located would permit the very exploratory searches the framers intended to prevent when they enacted the Fourth Amendment. When officers have probable cause to search a particular compartment of a vehicle for evidence of a crime, and no such evidence is found, the search must stop absent facts generating probable cause to search another compartment of the vehicle.

Based on the foregoing, we conclude Officer Velarde did not have probable cause to search defendant's trunk; thus, the search was unreasonable under the Fourth Amendment and the judgment must be reversed.

DISPOSITION

The judgment is reversed. The matter is remanded to the trial court with directions to set aside its order denying defendant's motion to suppress, enter an order granting the motion, allow defendant to move to withdraw his plea, and conduct further proceedings consistent with this opinion.

/s/_____

ROBIE, J.

We concur:

/s/_____

EARL, P. J.

/s/_____

MCADAM, J.*

---

\*       Judge of the Yolo County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

27